IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                          Case No. 4:01-cr-40021-001

FRED BRADLEY                                                                                DEFENDANT

## ORDER

Before the Court is Defendant Fred Bradley's Motion to Reconsider.  (ECF No. 70).  The Court finds that no response is necessary and that the matter is ripe for consideration.

## I.  BACKGROUND

On January 18, 2002, Defendant pleaded guilty to the charge of distribution of more than 50 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii).  On January 15, 2002, the Court[1] sentenced Defendant to 188 months of imprisonment, 5 years of supervised release, a $100 special assessment, and a $1,000 fine.

Defendant completed his term of incarceration.  On August 25, 2015, he was released from prison and began his five-year term of supervised release.   On November 2, 2017, the United States Probation Office filed a Petition for Warrant or Summons for Offender Under Supervision in this case, in connection with newly filed charges against Defendant.  On July 25, 2019, the Court revoked Defendant's supervision and sentenced him to forty-one months of imprisonment, to be served consecutively to a term of imprisonment imposed in case number 4:17-cr-40014-SOH, with no term of supervised release to follow.

On February 10, 2020, Defendant filed a *pro se* motion for a reduction of his revocation

---

[1] The Honorable Harry F. Barnes presided over this case at the time.

sentence pursuant to section 404 of the First Step Act of 2018 (the "FSA"). On April 3, 2020, the Court denied that motion, finding that a revocation-sentence reduction was inappropriate under this case's circumstances. On April 30, 2020, Defendant filed the instant motion to reconsider.

## II. DISCUSSION

Defendant asks the Court to reconsider its denial of his request for a revocation-sentence reduction. His motion is largely based on the proliferation of COVID-19 in FCI-Oakdale, where he is incarcerated. Reading Defendant's *pro se* motion broadly, the Court will construe it as not only asking for reconsideration of the April 3, 2020 order, but also for a compassionate release or home confinement pursuant to the FSA.

### A. Reconsideration of April 3, 2020 Order

"None of the Rules of Criminal Procedure authorizes a generic motion to reconsider." *United States v. Grant*, 703 F.3d 427, 434 (8th Cir. 2013) (Riley, J., dissenting); *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010). However, "motions to reconsider are 'a well-established procedural rule for criminal, as well as civil, litigation.'" *Grant*, 607 F.3d at 502 (quoting *United States v. Healy*, 376 U.S. 75, 80 (1964)). In addressing motions to reconsider in the criminal context, courts ordinarily apply the same standards as those used in civil cases. *Rollins*, 607 F.3d at 502. In a civil context, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010).

Although Defendant was technically eligible for a revocation-sentence reduction pursuant to section 404 of the FSA, the Court's April 3, 2020 order declined to grant him that relief. The Court determined that, for various reasons, reducing Defendant's revocation sentence would undermine, rather than support, the sentencing considerations found at 18 U.S.C. § 3583(a). The

Court also found that Defendant's "post-conviction conduct demonstrates a disrespect for the trust this Court put in him and raises serious concerns regarding recidivism and the safety of those around him." (ECF No. 67, p. 8). Thus, the Court denied Defendant's motion for a revocation-sentence reduction.

To the extent that Defendant seeks reconsideration of that ruling, his request must be denied. Defendant does not point the Court to a manifest error of law or fact in the April 3, 2020 order, nor does he present any newly discovered evidence. Accordingly, Defendant's request for reconsideration should be denied.

### B. Compassionate Release

Liberally construed, Defendant's motion could also be read to ask for a compassionate release pursuant to section 603 of the FSA. However, if so, the Court must deny the request for the reasons that follow.

"A court's ability to modify a sentence after it has been imposed is extremely limited." United *States v. Schmitt*, No. CR12-4076-LTS, 2020 WL 96904, at *2 (N.D. Iowa Jan. 8, 2020). One way a court may modify a sentence is through "compassionate release," as outlined in 18 U.S.C. § 3582(c)(1)(A), which was recently modified by the FSA. Pub. L. No. 115-391, 132 Stat. 5194, at 5239.

Defendant bears the burden of showing that compassionate release is appropriate. *United States v. Mitchell*, No. 5:10-cr-50067-001, 2020 WL 544703, at *1 (W.D. Ark. Feb. 3, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016)). Relief is available under the FSA if the Court finds: (1) that the requested sentence reduction is warranted due to "extraordinary and compelling reasons;" (2) that the sentencing factors set forth in 18 U.S.C. § 3553(a) support a reduction "to the extent that they are applicable;" and (3) that a reduction would be consistent with

any applicable policy statements issued by the Sentencing Commission. 18 U.S.C. 3582(c)(1)(A)(i). The Court must first determine whether Defendant's motion is properly raised. If so, the Court will reach the above-listed issues.

As a threshold matter, Defendant must satisfy certain procedural requirements before filing a compassionate-release motion. "Before the enactment of the FSA, a motion for compassionate release had to be filed by the Director of the [BOP] and an inmate could not unilaterally file one with the court." *Mitchell*, 2020 WL 544703, at *1. However, the FSA now permits an inmate to seek a compassionate release directly from the sentencing court "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A)(i). Defendant bears the burden of showing that he exhausted his administrative rights with the BOP before filing a compassionate-release motion. *United States v. Davis*, No. 2:15-CR-20067-SHM, 2019 WL 6898676, at *1 (W.D. Tenn. Dec. 18, 2019).

The BOP has outlined the administrative exhaustion process in its Program Statement No. 5050.50. In short, a request for compassionate release must first be submitted to the warden of the BOP facility the defendant is housed in. 28 C.F.R. § 571.61(a). If the warden approves the request, it is sent to the BOP's general counsel for approval. 28 C.F.R. § 571.62(A)(1). If the general counsel approves the request, it is sent to the BOP's director for a final decision. 28 C.F.R. § 571.62(A)(2). If the director approves, he or she will ask the United States Attorney in the applicable judicial district to file a compassionate-release motion on BOP's behalf. 28 C.F.R. § 571.62(A)(3).

If the warden does not respond to the request, the defendant's administrative remedies are deemed exhausted after thirty days. 18 U.S.C. § 3582(c)(1)(A)(i). If the warden denies the compassionate-release request, the defendant must appeal the decision pursuant to the BOP's Administrative Remedy Program. 28 C.F.R. § 571.63(a). If the request is denied by the BOP's general counsel or director, that decision is considered a final administrative decision and the defendant's administrative remedies are exhausted at that time. 28 C.F.R. § 571.63(b-c).

The Court can only consider a motion for compassionate release "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 19 U.S.C. § 3582(c)(1)(A). Based on that language, Congress, in enacting the FSA, has statutorily imposed exhaustion requirements before a defendant can petition a court for compassionate release. *See United States v. Gross*, No. 15-769, 2020 WL 1673244, at *2 (S.D.N.Y. Apr. 6, 2020) ("[T]he statute includes an exhaustion requirement in recognition of the fact that [the BOP] is frequently in the best position to assess, at least in the first instance, a defendant's conditions, the risk presented to the public by his release, and the adequacy of a release plan."). Thus, courts cannot excuse a failure to exhaust administrative remedies before filing a compassionate-release motion, even in the face of the COVID-19 pandemic. *See United States v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020) (concluding that failure to exhaust administrative remedies for request for compassionate release based on COVID-19 pandemic presented "a glaring roadblock foreclosing compassionate release at this point" and that "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance"); *United States v. Epstein*, No. CR 14-287 (FLW), 2020 WL 1808616, at *4 (D.N.J. Apr. 9, 2020); (collecting cases and denying request for

compassionate release after concluding that the court could not waive a failure to exhaust administrative remedies); *United States v. Albertson*, No. 1:16-cr-00250-TWPMJD, 2020 WL 1815853, at *2 (S.D. Ind. Apr. 8, 2020) (same).

Defendant does not mention whether he has exhausted, or even begun, the BOP's administrative process with respect to compassionate release. The Court acknowledges the danger posed by the COVID-19 pandemic, but the Court is nonetheless constrained by the existing statutory authority and cannot waive the exhaustion requirement under the FSA. The Court must find that Defendant has not exhausted his administrative remedies, and thus, the Court does not currently possess the authority to consider a request for a compassionate release under the FSA. To the extent that Defendant asks for compassionate release, his motion should be denied without prejudice to its refiling in the future, along with evidence that he has exhausted his administrative remedies within the BOP. *See United States v. Mendoza*, No. CR103131DWFFLN, 2019 WL 6324870, at *4 (D. Minn. Nov. 26, 2019).

### C. Home Confinement

Defendant's motion could also be read to move under section 602 of the FSA for the Court to allow him to serve the remainder of his sentence on home confinement.[2] However, if so, the Court must deny that request for the following reasons.

Much like section 603, a prisoner must fully exhaust all administrative remedies within the BOP before filing a motion regarding confinement. *Austin v. Woods*, No. 2:19-cv-7-WHA, 2019

---

[2] Some federal courts have concluded that emergency petitions for release on home confinement, based on COVID-19, are properly construed as habeas requests pursuant to 28 U.S.C. § 2241. *See United States v. Brady*, No. 3:20-CV-623, 2020 WL 1865486, at *3 (M.D. Pa. Apr. 14, 2020) (collecting cases). To the extent that Defendant's request could be construed as seeking section 2241 habeas relief, it must be denied because a petitioner may only seek section 2241 relief in the federal judicial district in which he is incarcerated. *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002). Defendant is incarcerated in FCI Oakdale, which is not within the Western District of Arkansas. Thus, the Court lacks jurisdiction over any section 2241 habeas claims that he is asserting. If Defendant wishes to seek section 2241 habeas relief, he must do so in the federal judicial district in which he is incarcerated.

WL 2417654 (M.D. Ala. May 17, 2019). For the reasons discussed above, Defendant has not shown that he has exhausted his administrative remedies with the BOP. Thus, the request should be denied on that basis.

However, even if Defendant had exhausted his remedies, section 602 of the FSA does not allow the Court to order that he be placed on home confinement. A court may not modify a term of imprisonment once it has been imposed except when expressly permitted by statute or by Federal Rule of Criminal Procedure 35. 18 U.S.C. § 3582(c). Nothing in the FSA, or the statutes amended by it, permits the Court to order the BOP to place Defendant in home confinement. *United States v. Kluge*, No. CR 17-61 (DWF), 2020 WL 209287, at *3 (D. Minn. Jan. 14, 2020). Following the enactment of section 602(a) of the FSA, the BOP is directed to "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months" and should, to the extent practicable, "place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." 18 U.S.C. § 3624(c)(2). However, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4), 3621(b).

Thus, under the FSA, the discretionary authority to place a prisoner on home confinement remains solely with the BOP. 18 U.S.C. §§ 3624(c)(4), 3621(b); *see also United States v. Norris*, No. 7:17-CR-40-FL-1, 2019 WL 5079759, at *1 (E.D.N.C. Oct. 10, 2019) (collecting cases). The FSA does not provide the Court the authority to place Defendant on home confinement or to otherwise order the BOP to do so. To the extent that Defendant seeks to be released to home

7

confinement, he must make that request with the BOP.[3]

### III.  CONCLUSION

For the above-discussed reasons, the Court finds that Defendant's motion to reconsider (ECF No. 70) should be and is hereby **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**, this 4th day of May, 2020.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[3] The Court shares Defendant's concerns about the effect of COVID-19.  However, those concerns are not being ignored by the BOP or the Court.  Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, "expand[s] the cohort of inmates who can be considered for home release."  Pursuant to that provision of the CARES Act, on April 3, 2020, United States Attorney General William Barr issued a memorandum instructing the BOP to maximize transfer to home confinement for "all appropriate inmates held at FCI Oakdale, FCI Danbury, FCI Elkton, and similarly situated BOP facilities where COVID-19 is materially affecting operations."  *See* Memorandum from Attorney General William Barr to Director of Bureau of Prisons, *The Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (April 3, 2020), available at https://politi.co/2UV3JBi (last visited May 4, 2020).  The Court's ruling here should not be read to reflect negatively on Defendant's eligibility for home confinement or on the conditions of any such placement.  The Court trusts that if Defendant submits a request for home confinement to the BOP, that it will promptly review his eligibility for some type of release, removal, or furlough, if appropriate, under the standards issued by the CDC on which persons are at heightened risk.